UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC S. KIRSCHNER,
as Trustee of the Refco Litigation Trust,

                        Plaintiff,

          - against -

THOMAS H. LEE PARTNERS, L.P.;
THOMAS H. LEE ADVISORS, LLC; THL
MANAGERS V, LLC; THL EQUITY
ADVISORS V, L.P.; THOMAS H. LEE EQUITY
FUND V, L.P.; THOMAS H. LEE PARALLEL
FUND V, L.P.; THOMAS H. LEE EQUITY
(CAYMAN) FUND V, L.P.; THOMAS H. LEE
INVESTORS LIMITED PARTNERSHIP; 1997
THOMAS H. LEE NOMINEE TRUST; THOMAS
H. LEE; DAVID V. HARKINS; SCOTT L.
JAECKEL; and SCOTT A. SCHOEN,

                   Defendants.

No. 07 Civ. 7074 (GEL)

## DEFENDANTS' ANSWER TO THE COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Defendants*

Defendants Thomas H. Lee Partners, L.P., Thomas H. Lee Advisors, LLC, THL Managers V, LLC ("THL Managers"), THL Equity Advisors V, LLC (improperly identified in the Complaint as Thomas H. Lee Equity Advisors V, L.P.), Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., Thomas H. Lee Investors Limited Partnership and The 1997 Thomas H. Lee Nominee Trust (collectively, the "THL Partner Defendants"), and Thomas H. Lee, David V. Harkins, Scott L. Jaeckel and Scott A. Schoen (collectively, the "THL Individual Defendants," and together with the THL Partner Defendants, the "THL Defendants"), for their Answer to the Complaint filed by Marc S. Kirschner, as Trustee of the Refco[1] Litigation Trust ("Plaintiff"), respond as follows:

## STATEMENT OF THE CASE

1.      Deny any wrongdoing; admit that Refco conducted an initial public offering of its common stock on or about August 11, 2005 (the "IPO"), that Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P. (collectively, the "THL Funds"), along with their affiliates and co-investors, held approximately 42.7% of Refco's common stock after the IPO, and that Refco filed for bankruptcy protection under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on October 17, 2005 (the "Petition Date"); refer to Refco's August 2005 Initial Public Offering Registration Statement (the "IPO Registration Statement") for the terms of the IPO and a description of the proceeds obtained in connection therewith; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the amounts owed to Refco's creditors and customers and deny any liability therfor; aver that the allegations concerning Refco's potential liabilities in connection with the IPO constitute legal conclusions to

---

[1] Refco and its affiliates, subsidiaries and predecessors are collectively referred to herein as "Refco" or the "Company," unless reference to a specific Refco entity is made.

which no response is required (to the extent a response is required, the THL Defendants deny those allegations as directed to them); and otherwise deny the allegations contained in Paragraph 1 of the Complaint.

2.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group Ltd., LLC ("Refco Group") in August 2004 (the "August 2004 Transaction"); refer to the IPO Registration Statement for a description of the sales by the selling stockholders in the IPO; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the perceptions of the THL Defendants, as characterized by Plaintiff; and otherwise deny the allegations contained in Paragraph 2 of the Complaint.

3.    Aver that Refco's former Chief Executive Officer, Phillip Bennett, his co-conspirators (including, on information and belief, Robert Trosten, Bank für Arbeit und Wirtshaft ("BAWAG") and Santo Maggio) and those acting on his or their behalf, engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of Refco's customers and creditors; and otherwise deny the allegations contained in Paragraph 3 of the Complaint.

4.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction, that the THL Funds, along with their affiliates and co-investors, held approximately 42.7% of Refco's common stock after the IPO, that the THL Individual Defendants served on the New Refco Group Ltd., LLC ("New Refco") Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of

Directors following the IPO, and that on or about August 5, 2004, New Refco, Refco Group and

THL Managers entered into a Management Agreement (the "Management Agreement"); refer to

the Management Agreement for its true and complete contents; aver that the allegations

contained in Paragraph 4 of the Complaint as to the duties purportedly owed by the THL

Defendants to Refco constitute legal conclusions to which no response is required (to the extent a

response is required, the THL Defendants deny those allegations); and otherwise deny the

allegations contained in Paragraph 4 of the Complaint.

     5.     Deny the allegations contained in Paragraph 5 of the Complaint.

     6.     Aver that Bennett, his co-conspirators and others acting on his or their

behalf made material misrepresentations and omitted to disclose material facts to the THL

Defendants, including in connection with the August 2004 Transaction and the IPO; refer to the

document referenced for its true and complete contents; and otherwise deny the allegations

contained in Paragraph 6 of the Complaint.

     7.     Refer to the documents referenced for their true and complete contents;

and otherwise deny the allegations contained in Paragraph 7 of the Complaint.

     8.     Refer to the document referenced for its true and complete contents; and

otherwise deny the allegations contained in Paragraph 8 of the Complaint.

     9.     Deny the allegations contained in Paragraph 9 of the Complaint.

     10.     Refer to the IPO Registration Statement for a description of the proceeds

obtained in connection with the IPO; and otherwise deny the allegations contained in Paragraph

10 of the Complaint.

11.    Admit that Thomas H. Lee Partners, L.P. ("THLP") was in the process of planning a new investment fund at or around the time of the IPO; and otherwise deny the allegations contained in Paragraph 11 of the Complaint.

12.    Aver that the allegations contained in the first sentence of Paragraph 12 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 12 of the Complaint.

13.    Admit that Plaintiff purports to describe the claims asserted in the Complaint and the relief sought in this action; deny any liability to Plaintiff and any and all persons and entities he purports to represent or on whose behalf he purports to bring this action; and otherwise deny the allegations contained in Paragraph 13 of the Complaint.

## JURISDICTION AND VENUE

14.    Admit the allegations contained in Paragraph 14 of the Complaint.

15.    Admit that Plaintiff purports to base jurisdiction over the subject matter of this action on the statutory provision referenced and that certain of the THL Defendants filed proofs of claim in this District relating to Refco; refer to those filings for their true and complete contents; and otherwise aver that the allegations contained in Paragraph 15 of the Complaint constitute legal conclusions to which no response is required.

16.    Admit that Plaintiff purports to base venue on the statutory provision referenced; and otherwise aver that the allegations contained in Paragraph 16 constitute legal conclusions to which no response is required.

**PARTIES**

17.    Admit that Marc S. Kirschner is the Court-approved Trustee of the Refco

Litigation Trust and purports to bring this action on behalf of the Refco entities referenced; refer

to the Refco plan of reorganization and related filings for a true and complete description of the

status and powers of the Litigation Trustee; and otherwise deny knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the

Complaint.

18.    Admit the allegations contained in Paragraph 18 of the Complaint.

19.    Admit the allegations contained in Paragraph 19 of the Complaint.

20.    Admit that Refco Inc. filed for bankruptcy protection under chapter 11 of

the Bankruptcy Code on October 17, 2005, that it was organized under the laws of Delaware and

that (prior to its bankruptcy filing) had its principal place of business at One World Financial

Center, 200 Liberty Street, Tower A, New York, New York 10281, that (prior to its bankruptcy

filing) it was a leading independent provider of execution and clearing services for exchange-

traded derivatives and a major provider of prime brokerage services in the fixed income and

foreign exchange markets that sought to offer its customers low-cost trade execution and clearing

services on a broad spectrum of derivatives exchanges and over-the-counter markets, that it was

formed in connection with the IPO, and that it was the issuer of common stock sold pursuant to

the IPO; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 20 of the Complaint.

21.    Admit the allegations contained in Paragraph 21 of the Complaint.

22.    Admit the allegations contained in Paragraph 22 of the Complaint.

23.    Admit that Refco Capital Markets Ltd. ("RCM") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on October 17, 2005, that it was organized under the laws of Bermuda, and that it was a Refco subsidiary; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.    Admit that Refco Securities, LLC was a subsidiary of Refco Group organized under Delaware law with its principal place of business at One World Financial Center, 200 Liberty Street, 23rd Floor, New York, NY 10281, and that it was a registered broker-dealer; and otherwise deny the allegations contained in Paragraph 24 of the Complaint.

25.    Admit that Refco, LLC was a wholly owned subsidiary of Refco Group organized under Delaware law and a registered futures commission merchant; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

26.    Refer to the IPO Registration Statement for a description of Refco's organizational structure as of the date of that filing; and otherwise deny the allegations contained in Paragraph 26 of the Complaint.

27.    Aver that THLP has approximately $20 billion, not $12 billion, in capital under management; admit that THLP focuses on investing in large growth-oriented companies, that THLP is a Delaware limited partnership headquartered in Boston; and otherwise deny the allegations contained in Paragraph 27 of the Complaint.

28.    Admit the allegations contained in the first sentence of Paragraph 28 of the Complaint, that THLP states on its website that since its founding in 1974 it has become the preeminent growth buyout firm, that it has raised approximately $20 billion of equity capital,

investing through its investment funds in more than 100 businesses with an aggregate purchase price of more than $125 billion, that it portrays itself as a highly experienced and successful investor, and that THLP, through its investment funds, has made investments in the companies, among others, listed in the last sentence of Paragraph 28 of the Complaint; and otherwise deny the allegations contained in Paragraph 28 of the Complaint.

29.    Admit that in August 2004, the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group for approximately $507 million in cash, that THL Equity Advisors V, LLC ("THL Equity Advisors") (improperly identified in the Complaint as Thomas H. Lee Equity Advisors V, L.P.) is a Delaware limited liability company in which THLP is the sole member, that THL Managers is a limited liability company that is 99.5% owned by THLP and 0.5% owned by Thomas H. Lee Advisors, LLC, that Thomas H. Lee Equity Fund V, L.P. and Thomas H. Lee Parallel Fund V, L.P. are Delaware limited partnerships whose general partner is THL Equity Advisors, that Thomas H. Lee Equity (Cayman) Fund V, L.P. is a Cayman Islands limited partnership whose general partner is THL Equity Advisors, that Thomas H. Lee Advisors, LLC is a Delaware limited liability company, that Thomas H. Lee Investors Limited Partnership is a Massachusetts limited partnership whose general partner is THL Investment Management Corp., and that Thomas H. Lee had voting and investment control over the Refco common shares owned by The 1997 Thomas H. Lee Nominee Trust; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 29 of the Complaint.

30.    Aver that the allegations contained in the first sentence of Paragraph 30 of the Complaint purport only to define the term "THL Entities" and thus do not constitute

allegations to which a response is required; admit that the THL Funds, along with their affiliates and co-investors, acquired 57% of the equity interests in Refco Group in connection with the August 2004 Transaction, and that following the IPO, they collectively held approximately 42.7% of Refco's common stock; and otherwise deny the allegations contained in Paragraph 30 of the Complaint.

31.     Deny the allegations contained in Paragraph 31 of the Complaint.

32.     Admit that Thomas H. Lee founded the Thomas H. Lee Company, the predecessor to THLP, that at the time of the August 2004 Transaction, he served as THLP's Chairman and Chief Executive Officer, that he currently is President and Chief Executive Officer of Thomas H. Lee Capital LLC, a financial services company he founded in December 1996, and that he served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO; aver that he was involved in the process by which the THL Funds made their investment in Refco, and that he monitored Refco in connection and consistent with his obligations as a member of the Board and in the THL Funds' capacity as shareholders; and otherwise deny the allegations contained in Paragraph 32 of the Complaint.

33.     Admit the allegations contained in the second sentence of Paragraph 33 of the Complaint, that Harkins is Vice Chair and a Managing Director of THLP, and that he served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO; aver that he was involved in the process by which the THL Funds made their investment in Refco, and that he monitored Refco in connection and consistent with his obligations as a member of the Board and in the

THL Funds' capacity as shareholders; and otherwise deny the allegations contained in Paragraph 33 of the Complaint.

34.    Admit the allegations contained in the third, fourth and fifth sentences of Paragraph 34 of the Complaint, that Jaeckel served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO, that he served as treasurer of Refco Finance Holdings, LLC ("Refco Finance Holdings") from on or about June 4, 2004 through August 5, 2004, that he served as treasurer of Refco Finance Inc. ("Refco Finance") (which was one of the co-issuers of Refco's registered bonds) from on or about July 6, 2004 until some time after the closing of the August 2004 Transaction, and that he attended certain audit committee meetings after the August 2004 Transaction; aver that he was involved in the process by which the THL Funds made their investment in Refco, and that he monitored Refco in connection and consistent with his obligations as a member of the Board and in the THL Funds' capacity as shareholders; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning New Refco; and otherwise deny the allegations contained in Paragraph 34 of the Complaint.

35.    Admit the allegations contained in the third, fourth, fifth and sixth sentences of Paragraph 35 of the Complaint, that Schoen served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO, and that he served as president of Refco Finance from on or about July 6, 2004 until some time after the closing of the August 2004 Transaction and as sole director of Refco Finance from on or about August 5, 2004 through October 11, 2004; aver that he was involved in the process by which the THL Funds made their investment in Refco, and that he monitored Refco in connection and consistent with his obligations as a member of the

Board and in the THL Funds' capacity as shareholders; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning New Refco; and otherwise deny the allegations contained in Paragraph 35 of the Complaint.

36.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction and that they collectively held approximately 42.7% of Refco's common stock after the IPO; and otherwise deny the allegations contained in Paragraph 36 of the Complaint.

37.    Refer to the documents referenced for their true and complete contents; and otherwise aver that the allegations contained in Paragraph 37 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations).

38.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction, that they collectively held approximately 42.7% of Refco's common stock after the IPO, that THL Managers was a party to the Management Agreement, that the THL Individual Defendants served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO, and that the THL Individual Defendants served on certain committees of the New Refco Board of Managers and the Refco Inc. Board of Directors; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the officers of New Refco; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 38 of the Complaint.

39.    Refer to the Court's April 30, 2007 decision in In re Refco Inc. Securities Litigation, 2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007), for its true and complete contents; and otherwise deny the allegations contained in Paragraph 39 of the Complaint.

## FACTUAL BACKGROUND

40.    Admit that, at the time of the IPO, Refco served more than 200,000 accounts for customers, that it was a leading independent provider of execution and clearing services for exchange-traded derivatives and a major provider of prime brokerage services in the fixed income and foreign exchange markets, that in 2004 it was the largest provider of customer transaction volume to the Chicago Mercantile Exchange, and that from at least August 2004 until the IPO, Refco conducted its business through Refco Group and its direct and indirect subsidiaries; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint.

41.    Admit that New Refco was formed in connection with the August 2004 Transaction, which closed on August 5, 2004, and that it served as the holding company of the Refco businesses until the reincorporation undertaken in connection with the IPO; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint.

42.    Admit that Refco Inc. was formed in connection with the IPO, that immediately following the IPO, the THL Funds, along with their affiliates and co-investors, held approximately 42.7% of Refco's common stock, Bennett, Refco's management and independent directors held approximately 36.5%, and the public held approximately 20.8%; and otherwise deny the allegations contained in Paragraph 42 of the Complaint.

43.     Admit that Bennett served as President, Chief Executive Officer and Chairman of Refco from September 1998 until he took a leave of absence in October 2005 and then subsequently left the Company; refer to Refco's October 10, 2005 press release for its true and complete contents; and otherwise deny the allegations contained in Paragraph 43 of the Complaint.

44.     Admit, on information and belief, that Grant served as President of Refco until in or about September 1998 and that he sold his interest in Refco Group Holdings, Inc. ("RGHI") to Bennett in connection with the August 2004 Transaction; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Complaint.

45.     Admit, on information and belief, that Trosten served as Refco's Chief Financial Officer and Executive Vice President from 2001 until his departure following the August 2004 Transaction; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Complaint.

46.     Admit that Refco Inc. and certain of its subsidiaries and affiliates filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on October 17, 2005, that Bennett, Grant and Trosten have been indicted by a Grand Jury, and that their criminal trial currently is scheduled to commence in March 2008; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, Bennett's and his co-conspirators' fraudulent scheme; aver that the allegations contained in the first sentence of Paragraph 46 of the Complaint concerning Refco's bankruptcy filing constitute legal conclusions to which no response is required (to the

extent a response is required, the THL Defendants deny those allegations as directed to them); and otherwise deny the allegations contained in Paragraph 46 of the Complaint.

47.     Admit that Credit Suisse First Boston LLC ("CSFB") contacted THLP in or about October 2003 regarding a possible investment in Refco; and otherwise deny the allegations contained in Paragraph 47 of the Complaint.

48.     Admit that in late 2003, THLP received a Confidential Information Memorandum from CSFB; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 48 of the Complaint.

49.     Admit that THLP, with the assistance of its professional advisors, engaged in extensive due diligence in connection with the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 49 of the Complaint.

50.     Admit that THLP engaged outside professionals to assist in its due diligence of Refco in connection with the August 2004 Transaction, including, among others, Weil, Gotshal & Manges LLP ("Weil Gotshal") for legal due diligence, KPMG LLP ("KPMG") for accounting due diligence, and McKinsey & Co. ("McKinsey") to conduct customer surveys across Refco's business lines and to analyze and forecast industry growth; and otherwise deny the allegations contained in Paragraph 50 of the Complaint.

51.     Admit that Refco Group (as successor by merger to Refco Finance Holdings), in connection with the August 2004 Transaction, paid $4,509,645 to Sandler O'Neill & Partners, $3,765,000 to Weil Gotshal, $710,002 to KPMG, and $29,175 to Mercer Human Resource Consulting LLC for transaction fees and expenses and $558,209 to McKinsey & Co., Inc. for consulting fees; and otherwise deny the allegations contained in Paragraph 51 of the Complaint.

52.    Refer to the Court's April 30, 2007 opinion in In re Refco Inc. Securities Litigation, 2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007), for its true and complete contents; and otherwise deny the allegations contained in Paragraph 52 of the Complaint.

53.    Deny the allegations contained in Paragraph 53 of the Complaint.

54.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 54 of the Complaint.

55.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 55 of the Complaint.

56.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 56 of the Complaint.

57.    Deny the allegations contained in Paragraph 57 of the Complaint.

58.    Admit that THLP, RGHI and Refco Group signed a letter of intent, dated April 16, 2004, with respect to a proposed equity investment in Refco (the "Letter of Intent"); refer to the Letter of Intent for its true and complete contents; and otherwise deny the allegations contained in Paragraph 58 of the Complaint.

59.    Refer to the Letter of Intent for its true and complete contents; and otherwise deny the allegations contained in Paragraph 59 of the Complaint.

60.    Admit that on or about May 17, 2004, KPMG provided THLP with a draft report regarding its accounting due diligence for the August 2004 Transaction; refer to that document for its true and complete contents; and otherwise deny the allegations contained in Paragraph 60 of the Complaint.

61.    Deny the allegations contained in Paragraph 61 of the Complaint.

62.    Admit that Refco, prior to the August 2004 Transaction, had been the subject of litigation and regulatory proceedings and matters and had paid fines imposed by the Commodity Futures Trading Commission (the "CFTC"), which history was the subject of public disclosures, including in the IPO Registration Statement; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

63.    Admit that THLP reviewed and assessed Refco's litigation and regulatory history in connection with its due diligence for the August 2004 Transaction; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 63 of the Complaint.

64.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 64 of the Complaint.

65.    Admit that THLP was aware that the Securities and Exchange Commission (the "SEC") was conducting an investigation into alleged short sales of the stock of Sedona Corporation ("Sedona"), and that, at the time of the IPO, Maggio had been in negotiations with the SEC staff and was near resolution of certain supervisory matters raised in the investigation, all of which was disclosed in Refco Group's Form 10-Q filed with the SEC on or about July 15, 2005 (the "Form 10-Q") and the IPO Registration Statement; aver that Bennett and his co-conspirators (including Maggio) engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 65 of the Complaint.

66. Admit that the Form 10-Q and the IPO Registration Statement both disclosed that Maggio had been in negotiations with the SEC staff and was near resolution of certain supervisory matters raised in the Sedona investigation; refer to those documents for their true and complete contents; and otherwise deny the allegations contained in Paragraph 66 of the Complaint.

67. Refer to the decision of the United States Court of Appeals for the Seventh Circuit in Eastern Trading Co. v. Refco, Inc., 229 F.3d 617, 626 (7th Cir. 2000), for its true and complete contents and for a description of the subject matter of, and the allegations made in, that litigation; and otherwise deny the allegations contained in Paragraph 67 of the Complaint.

68. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 68 of the Complaint.

69. Admit that THLP reviewed and assessed Refco's litigation and regulatory history in connection with its due diligence for the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 69 of the Complaint.

70. Deny the allegations contained in Paragraph 70 of the Complaint.

71. Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 71 of the Complaint.

72. Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 72 of the Complaint.

73. Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 73 of the Complaint.

74. Deny the allegations contained in Paragraph 74 of the Complaint.

75.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 75.

76.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 76 of the Complaint.

77.     Deny the allegations contained in Paragraph 77 of the Complaint.

78.     Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge, of that scheme; and otherwise deny the allegations contained in Paragraph 78 of the Complaint.

79.     Refer to the documents referenced for their true and complete contents; admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 79 of the Complaint.

80.     Admit that on or about June 17, 2004, THLP was advised by Refco that a jury had returned a verdict against it in favor of Tradewinds Financial ("Tradewinds"), which litigation previously had been the subject of discussions with Refco personnel, and that following the verdict, THLP expressed a desire for continuous disclosure as to the status of that proceeding; and otherwise deny the allegations contained in Paragraph 80 of the Complaint.

81.     Admit that Schoen discussed the Tradewinds verdict with Bennett in June 2004; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 81 of the Complaint.

82.     Refer to the document quoted for its true and complete contents; and otherwise deny the allegations contained in Paragraph 82 of the Complaint.

83.    Admit that in late May 2004, THLP received a call from a contact at an investment bank who reported that his cousin had worked at Refco in the 1990s and told him that in the 1990s Refco had "sloughed off" certain trading losses into a then unconsolidated foreign subsidiary; and otherwise deny the allegations contained in Paragraph 83 of the Complaint.

84.    Admit that KPMG forwarded THLP a list of possible questions for the cousin, along with other potential procedures to consider should THLP decide such further inquiry was necessary based on its assessment; refer to that document for its true and complete contents; and otherwise deny the allegations contained in Paragraph 84 of the Complaint.

85.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 85 of the Complaint; and otherwise deny the allegations contained in Paragraph 85 of the Complaint.

86.    Admit that representatives of THLP met with Bennett to discuss the information they had learned from their contact at the investment bank, and that THLP representatives did not meet with Ernst & Young in connection with the August 2004 Transaction; refer to the document referenced for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ernst & Young LLP's work for Refco and its subsequent resignation; and otherwise deny the allegations contained in Paragraph 86 of the Complaint.

87.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 87 of the Complaint.

88.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 88 of the Complaint.

89.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 89 of the Complaint.

90.    Deny the allegations contained in Paragraph 90 of the Complaint.

91.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 91 of the Complaint.

92.    Admit that in connection with the August 2004 Transaction, Refco entered into senior credit facilities providing for a fully drawn $800 million term loan, that Refco Finance and Refco Finance Holdings issued $600 million in aggregate principal amount of senior subordinated debt (the "Rule 144A Bond Offering"), and that at the closing of the August 2004 Transaction, Refco Finance Holdings merged with and into Refco Group with Refco Group the surviving entity; refer to the Offering Memorandum for the Rule 144A Bond Offering for a description of that offering; and otherwise deny the allegations contained in Paragraph 92 of the Complaint.

93.    Admit that at the closing of the August 2004 Transaction, THLP understood that Refco Group was to distribute $500 million in cash and the equity interests in Refco Group's asset management business to RGHI; refer to the June 8, 2004 Equity Purchase and Merger Agreement for the agreements by and between the parties thereto in connection with the August 2004 Transaction; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 of the Complaint.

94.    Admit that at the closing of the August 2004 Transaction, the THL Funds, along with their affiliates and co-investors, contributed their equity interests in Refco Group to New Refco in exchange for 283.24 Class A Common Units of New Refco, and that RGHI received $875,377,839.76 in cash and 211.83 Class A Common Units of New Refco; and otherwise deny the allegations contained in Paragraph 94 of the Complaint.

95.    Admit the allegations contained in Paragraph 95 of the Complaint.

96.    Admit that the THL Individual Defendants served on the New Refco Board of Managers following the August 2004 Transaction through July 2005 and then on the Refco Inc. Board of Directors following the IPO, as designated by the THL Funds; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning New Refco; and otherwise deny the allegations contained in Paragraph 96 of the Complaint.

97.    Aver that the allegations contained in Paragraph 97 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations).

98.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 98 of the Complaint.

99.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 99 of the Complaint.

100.    Refer to the document referenced for its true and complete contents; and otherwise aver that the allegations contained in Paragraph 100 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations).

101.    Admit that on or about August 5, 2004, New Refco, Refco Group and THL Managers entered into the Management Agreement; refer to the Management Agreement for its true and complete contents; and otherwise deny the allegations contained in Paragraph 101 of the Complaint.

102.    Admit that the Management Agreement was entered into in connection with the August 2004 Transaction, and that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group for $507 million cash in connection with that transaction; and otherwise deny the allegations contained in Paragraph 102 of the Complaint.

103.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 103 of the Complaint.

104.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 104 of the Complaint.

105.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 105 of the Complaint.

106.    Admit that Refco Group paid approximately $30 million to THL Managers as a transaction fee and approximately $1.67 million to THL Managers as a management fee at or around the time of the August 2004 Transaction, in accordance with the Management Agreement; refer to the Management Agreement for its true and complete contents; and otherwise deny the allegations contained in Paragraph 106 of the Complaint.

107.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 107 of the Complaint.

108.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 108 of the Complaint.

109.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 109 of the Complaint.

110.    Aver that the allegation contained in the first sentence of Paragraph 110 of the Complaint constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 110 of the Complaint.

111.    Deny the allegations contained in Paragraph 111 of the Complaint.

112.    Admit that the THL Funds, along with their affiliates and co-investors, acquired approximately 57% of the equity interests in Refco Group in connection with the August 2004 Transaction; aver that the allegations concerning the THL Defendants' "obligations" constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 112 of the Complaint.

113.    Admit that THLP representatives discussed the possibility of Refco retaining a "Big Four" accounting firm following the August 2004 Transaction; and otherwise deny the allegations contained in Paragraph 113 of the Complaint.

114.    Admit that on or about October 19, 2004, a meeting was held to discuss a possible initial public offering for Refco; aver that the allegations contained in the first sentence of Paragraph 114 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 114 of the Complaint.

115.     Admit that THLP was in the process of planning a new investment fund at or around the time of the IPO; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 115 of the Complaint.

116.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 116 of the Complaint.

117.     Deny the allegations contained in Paragraph 117 of the Complaint.

118.     Admit that THLP representatives discussed the possibility of Refco retaining a "Big Four" accounting firm following the August 2004 Transaction; aver that Grant Thornton LLP ("Grant Thornton"), in its capacity as the former, purportedly independent auditor of Refco, knowingly and/or with gross negligence made material misstatements or omissions to the THL Funds that helped keep hidden the fraudulent scheme perpetrated by Bennett and his co-conspirators, committed professional malpractice, and failed to conform its conduct to the professional and ethical standards governing the auditing profession; deny any involvement in, or knowledge of, the fraudulent scheme; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 118 of the Complaint.

119.     Deny the allegations contained in Paragraph 119 of the Complaint.

120.     Deny the allegations contained in Paragraph 120 of the Complaint.

121.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 121 of the Complaint.

122.     Deny the allegations contained in Paragraph 122 of the Complaint.

123.     Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 123 of the Complaint.

124.    Deny the allegations contained in Paragraph 124 of the Complaint.

125.    Deny the allegations contained in Paragraph 125 of the Complaint.

126.    Aver that, in connection with the August 2004 Transaction, Grant Thornton represented that no formal management letters were issued to Refco as part of the audit process, and further that no such letters were provided to THLP in connection with the August 2004 Transaction; admit that THLP was provided with a copy of a management letter for the fiscal year ending February 29, 2004 in the course of the IPO process after the close of the August 2004 Transaction; refer to the document cited for its true and complete contents; and otherwise deny the allegations contained in Paragraph 126 of the Complaint.

127.    Admit that THLP was provided with a copy of the Management Letter for the fiscal year ending February 29, 2004 in the course of the IPO process, after the close of the August 2004 Transaction; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 127 of the Complaint.

128.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 128 of the Complaint.

129.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 129 of the Complaint.

130.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 130 of the Complaint.

131.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 131 of the Complaint.

132.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 132 of the Complaint.

133.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 133 of the Complaint; and otherwise deny the allegations contained in Paragraph 133 of the Complaint.

134.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 134 of the Complaint.

135.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 135 of the Complaint.

136.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 136 of the Complaint.

137.    Deny the allegations contained in Paragraph 137 of the Complaint.

138.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 138 of the Complaint.

139.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 139 of the Complaint.

140.    Refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Complaint.

141.   Refer to the document referenced for its true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 141 of the Complaint.

142.   Aver that upon the consummation of the August 2004 Transaction, RGHI acquired the interests in profit sharing agreements held by Joseph J. Murphy, William M. Sexton, Maggio and Dennis A. Klejna, and that no profit sharing agreements held by any Refco executives (or any redemption payments) were disclosed to the THL Defendants prior to the August 2004 Transaction; refer to the IPO Registration Statement for a description of the payments; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 142 of the Complaint.

143.   Aver that, in connection with the due diligence for the August 2004 Transaction, representatives of the THL Defendants, requested information concerning Refco's employment and other arrangements with senior management, that they sent questionnaires to senior Refco executives, and that the referenced profit sharing agreements held by certain Refco executives were not disclosed to the THL Defendants in connection with the August 2004 Transaction; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 143 of the Complaint.

144.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144 of the Complaint.

145.    Admit that, in the months following the August 2004 Transaction, Refco began to consider and prepare for an IPO and that, in connection with such preparation, questionnaires were sent to certain Refco executives; refer to those questionnaires for their true and complete contents; and otherwise deny the allegations contained in Paragraph 145 of the Complaint.

146.    Admit that, in connection with the IPO, Murphy and Sexton disclosed that they had profit sharing arrangements that had been acquired by RGHI at or around the time of the August 2004 Transaction; refer to the IPO Registration Statement for a description of those arrangements and payments; refer to the document referenced for its true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146 of the Complaint.

147.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants so as to monetize their interests; admit that, in connection with the IPO, Sexton, Murphy, Maggio and Klejna disclosed profit sharing arrangements that had been acquired by RGHI at or around the time of the August 2004 Transaction, and that such arrangements had not been disclosed prior to the August 2004 Transaction; refer to the IPO Registration Statement for a description of those arrangements and payments, the effect of an IPO upon them, and the THL Defendants' knowledge thereof; and otherwise deny the allegations contained in Paragraph 147 of the Complaint.

148.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence and terms of profit sharing arrangements that Refco

executives may have held other than those disclosed in the IPO Registration Statement; aver that no profit sharing arrangements held by Refco executives other than Sexton, Murphy, Maggio and Klejna were disclosed to the THL Defendants; admit that copies of the redemption letters for these four individuals, but not the underlying agreements creating those rights, were provided in the course of preparing for the IPO; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; and otherwise deny the allegations contained in Paragraph 148 of the Complaint.

149.    Deny the allegations contained in Paragraph 149 of the Complaint.

150.    Admit that "Project Key" was used within Refco to refer to its proposed acquisition of Cargill Investor Services ("Cargill"); refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 150 of the Complaint.

151.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 151 of the Complaint.

152.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 152 of the Complaint.

153.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 153 of the Complaint.

154.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 154 of the Complaint.

155.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 155 of the Complaint.

156.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 156 of the Complaint.

157.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 157 of the Complaint.

158.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 158 of the Complaint.

159.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 159 of the Complaint.

160.    Refer to the minutes of the June 20, 2005 meeting of the New Refco Board of Managers and the referenced resolution for a description of the Board's actions with respect to the acquisition of Cargill; and otherwise deny the allegations contained in Paragraph 160 of the Complaint.

161.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 161 of the Complaint.

162.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 162 of the Complaint.

163.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 163 of the Complaint.

164.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 164 of the Complaint.

165.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 165 of the Complaint; and otherwise deny the allegations contained in Paragraph 165 of the Complaint.

166.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166 of the Complaint.

167.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 167 of the Complaint.

168.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 168 of the Complaint.

169.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 169 of the Complaint.

170.    Admit that THLP and the THL Individual Defendants were aware that loans had been issued to Suffolk, LLC; and otherwise deny the allegations contained in Paragraph 170 of the Complaint.

171.    Deny the allegations contained in Paragraph 171 of the Complaint.

172.    Aver that the allegations concerning the duties of the THL Defendants constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 172 of the Complaint.

173.    Admit that, in connection with the reincorporation undertaken for purposes of the IPO, Refco Inc. (at the time of its formation, a direct, wholly owned subsidiary of New Refco) became the holding company for the Refco businesses; and otherwise deny

knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 173 of the Complaint.

174.    Admit that, in connection with the reincorporation undertaken for purposes of the IPO, the THL Funds, along with their affiliates and co-investors, exchanged their direct or indirect equity interests in New Refco for 63,122,588 shares of Refco Inc. common stock, which, prior to the IPO, represented approximately 57% of the total available shares; and otherwise deny the allegations contained in Paragraph 174 of the Complaint.

175.    Admit that, at the time of the IPO, Harkins, Jaeckel, Lee, Schoen, Bennett, Leo R. Breitman, Nathan Gantcher and Ronald L. O'Kelley were directors of Refco Inc.; and otherwise deny the allegations contained in Paragraph 175 of the Complaint.

176.    Admit that Refco filed the IPO Registration Statement (including a prospectus (the "IPO Prospectus")) and amendments thereto in connection with the IPO; refer to the IPO Registration Statement and the IPO Prospectus for their true and complete contents and the terms of the IPO; and otherwise deny the allegations contained in Paragraph 176 of the Complaint.

177.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 177 of the Complaint.

178.    Admit that Grant Thornton served as Refco's auditors at the time of the IPO; and otherwise deny the allegations contained in Paragraph 178 of the Complaint.

179.    Admit that Refco and its IPO underwriters conducted a roadshow for the IPO at which information about Refco and the upcoming IPO was presented to potential investors and analysts; and otherwise deny the allegations contained in Paragraph 179 of the Complaint.

180.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 180 of the Complaint.

181.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 181 of the Complaint.

182.    Admit that Refco commenced the IPO on or about August 11, 2005, and that the THL Funds, along with their affiliates and co-investors, held approximately 42.7% of Refco's common stock after the IPO; refer to the IPO Registration Statement for a description of the sales by Refco's existing shareholders in connection with the IPO, the proceeds obtained and the terms thereof; and otherwise deny the allegations contained in Paragraph 182 of the Complaint.

183.    Refer to the IPO Registration Statement for the terms of the IPO and a description of Bennett's stock sales and the proceeds he obtained in connection therewith; and otherwise deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 183 of the Complaint.

184.    Refer to the IPO Registration Statement for the terms of the IPO and a description of the Company's use of the proceeds obtained in connection therewith; aver that Refco paid down debt following the IPO; and otherwise deny the allegations contained in Paragraph 184 of the Complaint.

185.    Deny the allegations contained in Paragraph 185 of the Complaint.

186.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning Refco's potential liabilities as a result of the IPO contained in the