first sentence of Paragraph 186 of the Complaint; refer to the IPO Registration Statement for a description of the sales by Refco's existing shareholders in connection with the IPO, the proceeds obtained and the terms thereof; aver that portions of the IPO Registration Statement and IPO Prospectus were rendered false and misleading by reason of the fraudulent scheme perpetrated by Bennett and his co-conspirators, and deny any involvement in, or knowledge of, that scheme; aver that the allegations concerning Refco's potential liabilities in connection with the IPO constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations as directed to them); and otherwise deny the allegations contained in Paragraph 186 of the Complaint.

187.   Aver that the allegations contained in Paragraph 187 of the Complaint do not constitute allegations to which a response is required (to the extent a response is required, the THL Defendants deny those allegations).

188.   Admit that on August 10, 2005, the Refco Board of Directors approved the payment of a dividend to Refco's pre-IPO shareholders; refer to the corporate records of Refco for a description of the actions of the Board in connection therewith; and otherwise deny the allegations contained in Paragraph 188 of the Complaint.

189.   Admit that on August 11, 2005, Refco's IPO underwriters exercised their over-allotment option, pursuant to which they purchased an additional 3.975 million shares of Refco common stock; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 189 of the Complaint.

190.   Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 190 of the Complaint.

191.    Admit that on or about August 18, 2005, Refco Inc. paid to the 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee Investors Limited Partnership and the THL Funds (the "THL Investors") approximately $40 million as a dividend; and otherwise deny the allegations contained in Paragraph 191 of the Complaint.

192.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; deny any involvement in, or knowledge of, that scheme; reincorporate their responses to the prior allegations to the extent incorporated herein; and otherwise deny the allegations contained in Paragraph 192 of the Complaint.

193.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 193 of the Complaint.

194.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 194 of the Complaint.

195.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 195 of the Complaint.

196.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 196 of the Complaint.

197. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 197 of the Complaint.

198. Aver that the allegations contained in the first sentence of Paragraph 198 of the Complaint constitute legal conclusions to which no response is required and are otherwise not directed at the THL Defendants (to the extent a response is required, the THL Defendants deny those allegations as directed at them); aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 198 of the Complaint.

199. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 199 of the Complaint.

200. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 200 of the Complaint.

201. Refer to the contemporaneous news reports for a description of the impact of the "Asian financial crisis;" and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 201 of the Complaint.

202. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 202 of the Complaint.

203. Refer to the documents referenced for their true and complete contents; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 203 of the Complaint.

204. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 204 of the Complaint.

205. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 205 of the Complaint.

206. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 206 of the Complaint.

207. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 207 of the Complaint.

208.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 208 of the Complaint.

209.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 209 of the Complaint.

210.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 210 of the Complaint.

211.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 211 of the Complaint.

212.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 212 of the Complaint.

213.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; deny the allegation in the fourth sentence of Paragraph 213 of the Complaint that "THL was in control of Refco;" and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 213 of the Complaint.

214.   Admit that, on October 10, 2005, Refco issued a press release (the "October 10, 2005 Press Release"); refer to that press release for its true and complete contents; and otherwise deny the allegations contained in Paragraph 214 of the Complaint.

215.   Refer to the October 10, 2005 Press Release for its true and complete contents; and otherwise deny the allegations contained in Paragraph 215 of the Complaint.

216.   Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; aver that the allegations contained in the second sentence of Paragraph 216 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 216 of the Complaint.

217.   Deny the allegations contained in Paragraph 217 of the Complaint.

218.   Admit the allegation contained in the first sentence of Paragraph 218 of the Complaint; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 218 of the Complaint.

219. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 219 of the Complaint.

220. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 220 of the Complaint.

221. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 221 of the Complaint.

222. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 222 of the Complaint.

223. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition both before and after the August 2004 Transaction; deny any involvement in, or knowledge of, that scheme; aver that the allegation that "the THL Entities were controlling shareholder" constitutes a legal conclusion to which no

response is required (to the extent a response is required, the THL Defendants deny that allegation); deny the allegation contained in the second sentence of Paragraph 223 of the Complaint that "THL had determined that Refco's accounting function was inadequate;" deny the allegation contained in the third sentence of Paragraph 223 of the Complaint; admit that the THL Individual Defendants served on the New Refco Board of Managers following the August 2004 Transaction through July 2005; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 223 of the Complaint.

224. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 224 of the Complaint.

225. Admit that RCM held itself out as an unregulated entity that was not required to segregate customer assets; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 225 of the Complaint.

226. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 226 of the Complaint.

227. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegations contained in the first sentence of Paragraph 227 of the Complaint; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 227 of the Complaint.

228. Aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 228 of the Complaint.

229. Deny the allegations contained in the fourth, fifth and sixth sentences of Paragraph 229 of the Complaint, except for the allegation contained in the fourth sentence of Paragraph 229 of the Complaint concerning Jaeckel being "the Treasurer of New Refco;" refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 229 of the Complaint.

230. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 230 of the Complaint.

231. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegation in the first sentence of Paragraph 231 of the Complaint that "THL was in control of Refco;" and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 231 of the Complaint.

232. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegation contained in the first sentence of Paragraph 232 of the Complaint that "THL was in control of Refco" and the allegations contained in the second and third

sentences of Paragraph 232 of the Complaint; and otherwise deny knowledge or information sufficient to form a belief as to truth of the allegations contained in Paragraph 232 of the Complaint.

233. Aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets, and that certain of the THL Defendants were made aware of the results of Grant Thornton's audit of Refco's 2005 financial statements; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 233 of the Complaint.

234. Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets; and otherwise deny the allegations contained in Paragraph 234 of the Complaint.

235. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 235 of the Complaint.

236. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the Complaint.

237. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 237 of the Complaint that Refco "was insolvent and in the zone of insolvency beginning no later than the LBO," and that "numerous improper transactions caused Refco's insolvency to deepen;" and otherwise aver that the allegations contained in Paragraph 237 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations).

238. Admit that Refco acquired Cargill for approximately $208 million in cash, as well as future contingent cash payments, and that such acquisition was approved by the Refco Board; and otherwise deny the allegations contained in Paragraph 238 of the Complaint.

239. Admit that THLP and the THL Individual Defendants were aware that loans had been issued to Suffolk, LLC; deny knowledge or information sufficient to form a belief as to the truth of the allegations that the "Suffolk Loans were a sham;" and otherwise deny the allegations contained in Paragraph 239 of the Complaint.

240. Aver that portions of the IPO Registration Statement and the Registration Statement for Refco's registered bond offering were rendered false and misleading by reason of the fraudulent scheme perpetrated by Bennett and his co-conspirators, and deny any involvement in, or knowledge of, that scheme; aver that the allegations contained in the third sentence of Paragraph 240 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations as directed at them); deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning obligations incurred by Refco in connection with the IPO; and otherwise deny the allegations contained in Paragraph 240 of the Complaint.

241. Deny the allegations contained in Paragraph 241 of the Complaint.

242. Admit that the following payments were made by a Refco entity: (i) on or about August 5, 2004, approximately $30 million to THL Managers as a transaction fee in accordance with the Management Agreement, (ii) on or about August 5, 2004, approximately $1.67 million to THL Managers as a management fee in accordance with the Management Agreement, (iii) on or about March 2, 2005, approximately $1.458 million to THL Managers as a management fee in accordance with the Management Agreement, (iv) in or about August 2005,

approximately $40 million by Refco Inc. to the THL Investors as a dividend resulting from the underwriters' exercise of their over-allotment option in connection with the IPO, (v) approximately $12.2 million to the THL Investors in gross tax distributions and other receipts, and (vi) on or about August 26, 2005, approximately $12.872 million to THL Managers representing a lump-sum termination fee in accordance with the Management Agreement; refer to the Management Agreement for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the identity of the remaining payors of the foregoing amounts; aver that the allegation contained in the first sentence of Paragraph 242 of the Complaint that "the THL Defendants were fiduciaries of the Refco parent entities" constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 242 of the Complaint.

243.    Admit that Refco Group (as successor by merger to Refco Finance Holdings) paid transaction fees, expenses and/or consulting fees of approximately $9.5 million in connection with the August 2004 Transaction; refer to the IPO Registration Statement for a list of the costs and expenses payable by Refco in connection with the sale of its common stock in the IPO; aver that the allegation contained in the first sentence of Paragraph 243 of the Complaint that "the THL Entities and THL Directors were fiduciaries of the Refco parent entities" constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 243 of the Complaint.

244.    Admit that prior to the IPO, New Refco made cash distributions to the members of New Refco to enable them to meet their estimated income tax obligations; aver that

the allegation contained in the first sentence of Paragraph 244 of the Complaint that "the THL Entities and THL Directors were fiduciaries of the Refco parent entities" constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 244 of the Complaint.

245. Admit the allegation contained in the first sentence of Paragraph 245 of the Complaint, that the THL Investors sold approximately 7.73 million shares of Refco common stock in the IPO, obtaining proceeds therefrom of approximately $160 million, and that they retained approximately 49 million shares; refer to the IPO Registration Statement for the terms of the IPO and a description of the sales by the selling stockholders and the proceeds they obtained in connection therewith; and otherwise deny the allegations contained in Paragraph 245 of the Complaint.

246. Admit that the following payments were made by a Refco entity: (i) on or about August 5, 2004, approximately $30 million to THL Managers as a transaction fee in accordance with the Management Agreement, (ii) on or about August 5, 2004, approximately $1.67 million to THL Managers as a management fee in accordance with the Management Agreement, (iii) on or about March 2, 2005, approximately $1.458 million to THL Managers as a management fee in accordance with the Management Agreement, (iv) in or about August 2005, approximately $40 million by Refco Inc. to the THL Investors as a dividend resulting from the underwriters' exercise of their over-allotment option in connection with the IPO, (v) approximately $12.2 million to the THL Investors in gross tax distributions and other receipts, and (vi) on or about August 26, 2005, approximately $12.872 million to THL Managers representing a lump-sum termination fee in accordance with the Management Agreement; admit

that Refco Group (as successor by merger to Refco Finance Holdings) paid transaction fees, expenses and/or consulting fees of approximately $9.5 million in connection with the August 2004 Transaction; refer to the IPO Registration Statement for a list of the costs and expenses payable by Refco in connection with the sale of its common stock in the IPO, the terms of the IPO, and a description of the sales by the selling stockholders and the proceeds they obtained in connection therewith; and otherwise deny the allegations contained in Paragraph 246 of the Complaint.

247.   Admit that Refco filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on October 17, 2005; refer to the October 10, 2005 Press Release for its true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 247 of the Complaint.

248.   Admit that Bennett was arrested by the United States Attorney for the Southern District of New York (the "USAO") on or about October 11, 2005 and later indicted by a Grand Jury, that various agencies of the United States government have investigated the circumstances leading to Refco's bankruptcy filing, and that Trosten and Grant have since been indicted for their participation in the fraudulent scheme; refer to the indictments for their true and complete contents; and otherwise deny the allegations contained in Paragraph 248 of the Complaint.

249.   Admit that a superseding indictment was entered against Bennett and Trosten on October 24, 2006; refer to that document for its true and complete contents; and otherwise deny the allegations contained in that Paragraph 249 of the Complaint.

250. Admit that a superseding indictment was entered against Bennett, Trosten and Grant on January 16, 2007; refer to that document for its true and complete contents; and otherwise deny the allegations contained in that Paragraph 250 of the Complaint.

## COUNT I

251. Repeat and reallege their responses to Paragraphs 1 through 250 of the Complaint as if fully set forth herein.

252. Admit that the following payments were made by a Refco entity: (i) on or about August 5, 2004, approximately $30 million to THL Managers as a transaction fee in accordance with the Management Agreement, (ii) on or about August 5, 2004, approximately $1.67 million to THL Managers as a management fee in accordance with the Management Agreement, (iii) on or about March 2, 2005, approximately $1.458 million to THL Managers as a management fee in accordance with the Management Agreement, (iv) in or about August 2005, approximately $40 million by Refco Inc. to the THL Investors as a dividend resulting from the underwriters' exercise of their over-allotment option in connection with the IPO, (v) approximately $12.2 million to the THL Investors in gross tax distributions and other receipts, and (vi) on or about August 26, 2005, approximately $12.872 million to THL Managers representing a lump-sum termination fee in accordance with the Management Agreement; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the identity of the remaining payors of the foregoing amounts; admit that Refco Group (as successor by merger to Refco Finance Holdings) paid transaction fees, expenses and/or consulting fees of approximately $9.5 million in connection with the August 2004 Transaction; refer to the IPO Registration Statement for a list of the costs and expenses payable by Refco in connection with the sale of its common stock in the IPO; and otherwise deny the allegations contained in Paragraph 252 of the Complaint.