115.     Admit that THLP was in the process of planning a new investment fund at or around the time of the IPO; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 115 of the Complaint.

116.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 116 of the Complaint.

117.     Deny the allegations contained in Paragraph 117 of the Complaint.

118.     Admit that THLP representatives discussed the possibility of Refco retaining a "Big Four" accounting firm following the August 2004 Transaction; aver that Grant Thornton LLP ("Grant Thornton"), in its capacity as the former, purportedly independent auditor of Refco, knowingly and/or with gross negligence made material misstatements or omissions to the THL Funds that helped keep hidden the fraudulent scheme perpetrated by Bennett and his co-conspirators, committed professional malpractice, and failed to conform its conduct to the professional and ethical standards governing the auditing profession; deny any involvement in, or knowledge of, the fraudulent scheme; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 118 of the Complaint.

119.     Deny the allegations contained in Paragraph 119 of the Complaint.

120.     Deny the allegations contained in Paragraph 120 of the Complaint.

121.     Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 121 of the Complaint.

122.     Deny the allegations contained in Paragraph 122 of the Complaint.

123.     Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 123 of the Complaint.

124.    Deny the allegations contained in Paragraph 124 of the Complaint.

125.    Deny the allegations contained in Paragraph 125 of the Complaint.

126.    Aver that, in connection with the August 2004 Transaction, Grant Thornton represented that no formal management letters were issued to Refco as part of the audit process, and further that no such letters were provided to THLP in connection with the August 2004 Transaction; admit that THLP was provided with a copy of a management letter for the fiscal year ending February 29, 2004 in the course of the IPO process after the close of the August 2004 Transaction; refer to the document cited for its true and complete contents; and otherwise deny the allegations contained in Paragraph 126 of the Complaint.

127.    Admit that THLP was provided with a copy of the Management Letter for the fiscal year ending February 29, 2004 in the course of the IPO process, after the close of the August 2004 Transaction; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 127 of the Complaint.

128.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 128 of the Complaint.

129.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 129 of the Complaint.

130.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 130 of the Complaint.

131.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 131 of the Complaint.

132.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 132 of the Complaint.

133.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 133 of the Complaint; and otherwise deny the allegations contained in Paragraph 133 of the Complaint.

134.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 134 of the Complaint.

135.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 135 of the Complaint.

136.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 136 of the Complaint.

137.    Deny the allegations contained in Paragraph 137 of the Complaint.

138.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 138 of the Complaint.

139.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 139 of the Complaint.

140.    Refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Complaint.

141.    Refer to the document referenced for its true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 141 of the Complaint.

142.    Aver that upon the consummation of the August 2004 Transaction, RGHI acquired the interests in profit sharing agreements held by Joseph J. Murphy, William M. Sexton, Maggio and Dennis A. Klejna, and that no profit sharing agreements held by any Refco executives (or any redemption payments) were disclosed to the THL Defendants prior to the August 2004 Transaction; refer to the IPO Registration Statement for a description of the payments; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 142 of the Complaint.

143.    Aver that, in connection with the due diligence for the August 2004 Transaction, representatives of the THL Defendants, requested information concerning Refco's employment and other arrangements with senior management, that they sent questionnaires to senior Refco executives, and that the referenced profit sharing agreements held by certain Refco executives were not disclosed to the THL Defendants in connection with the August 2004 Transaction; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 143 of the Complaint.

144.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144 of the Complaint.

145.    Admit that, in the months following the August 2004 Transaction, Refco began to consider and prepare for an IPO and that, in connection with such preparation, questionnaires were sent to certain Refco executives; refer to those questionnaires for their true and complete contents; and otherwise deny the allegations contained in Paragraph 145 of the Complaint.

146.    Admit that, in connection with the IPO, Murphy and Sexton disclosed that they had profit sharing arrangements that had been acquired by RGHI at or around the time of the August 2004 Transaction; refer to the IPO Registration Statement for a description of those arrangements and payments; refer to the document referenced for its true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146 of the Complaint.

147.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants so as to monetize their interests; admit that, in connection with the IPO, Sexton, Murphy, Maggio and Klejna disclosed profit sharing arrangements that had been acquired by RGHI at or around the time of the August 2004 Transaction, and that such arrangements had not been disclosed prior to the August 2004 Transaction; refer to the IPO Registration Statement for a description of those arrangements and payments, the effect of an IPO upon them, and the THL Defendants' knowledge thereof; and otherwise deny the allegations contained in Paragraph 147 of the Complaint.

148.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence and terms of profit sharing arrangements that Refco

27

executives may have held other than those disclosed in the IPO Registration Statement; aver that no profit sharing arrangements held by Refco executives other than Sexton, Murphy, Maggio and Klejna were disclosed to the THL Defendants; admit that copies of the redemption letters for these four individuals, but not the underlying agreements creating those rights, were provided in the course of preparing for the IPO; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; and otherwise deny the allegations contained in Paragraph 148 of the Complaint.

149.    Deny the allegations contained in Paragraph 149 of the Complaint.

150.    Admit that "Project Key" was used within Refco to refer to its proposed acquisition of Cargill Investor Services ("Cargill"); refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 150 of the Complaint.

151.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 151 of the Complaint.

152.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 152 of the Complaint.

153.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 153 of the Complaint.

154.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 154 of the Complaint.

155.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 155 of the Complaint.

156.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 156 of the Complaint.

157.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 157 of the Complaint.

158.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 158 of the Complaint.

159.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 159 of the Complaint.

160.    Refer to the minutes of the June 20, 2005 meeting of the New Refco Board of Managers and the referenced resolution for a description of the Board's actions with respect to the acquisition of Cargill; and otherwise deny the allegations contained in Paragraph 160 of the Complaint.

161.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 161 of the Complaint.

162.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 162 of the Complaint.

163.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 163 of the Complaint.

164.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 164 of the Complaint.

165.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 165 of the Complaint; and otherwise deny the allegations contained in Paragraph 165 of the Complaint.

166.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166 of the Complaint.

167.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 167 of the Complaint.

168.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 168 of the Complaint.

169.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 169 of the Complaint.

170.    Admit that THLP and the THL Individual Defendants were aware that loans had been issued to Suffolk, LLC; and otherwise deny the allegations contained in Paragraph 170 of the Complaint.

171.    Deny the allegations contained in Paragraph 171 of the Complaint.

172.    Aver that the allegations concerning the duties of the THL Defendants constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 172 of the Complaint.

173.    Admit that, in connection with the reincorporation undertaken for purposes of the IPO, Refco Inc. (at the time of its formation, a direct, wholly owned subsidiary of New Refco) became the holding company for the Refco businesses; and otherwise deny

knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 173 of the Complaint.

174.    Admit that, in connection with the reincorporation undertaken for purposes of the IPO, the THL Funds, along with their affiliates and co-investors, exchanged their direct or indirect equity interests in New Refco for 63,122,588 shares of Refco Inc. common stock, which, prior to the IPO, represented approximately 57% of the total available shares; and otherwise deny the allegations contained in Paragraph 174 of the Complaint.

175.    Admit that, at the time of the IPO, Harkins, Jaeckel, Lee, Schoen, Bennett, Leo R. Breitman, Nathan Gantcher and Ronald L. O'Kelley were directors of Refco Inc.; and otherwise deny the allegations contained in Paragraph 175 of the Complaint.

176.    Admit that Refco filed the IPO Registration Statement (including a prospectus (the "IPO Prospectus")) and amendments thereto in connection with the IPO; refer to the IPO Registration Statement and the IPO Prospectus for their true and complete contents and the terms of the IPO; and otherwise deny the allegations contained in Paragraph 176 of the Complaint.

177.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 177 of the Complaint.

178.    Admit that Grant Thornton served as Refco's auditors at the time of the IPO; and otherwise deny the allegations contained in Paragraph 178 of the Complaint.

179.    Admit that Refco and its IPO underwriters conducted a roadshow for the IPO at which information about Refco and the upcoming IPO was presented to potential investors and analysts; and otherwise deny the allegations contained in Paragraph 179 of the Complaint.

180.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 180 of the Complaint.

181.    Refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 181 of the Complaint.

182.    Admit that Refco commenced the IPO on or about August 11, 2005, and that the THL Funds, along with their affiliates and co-investors, held approximately 42.7% of Refco's common stock after the IPO; refer to the IPO Registration Statement for a description of the sales by Refco's existing shareholders in connection with the IPO, the proceeds obtained and the terms thereof; and otherwise deny the allegations contained in Paragraph 182 of the Complaint.

183.    Refer to the IPO Registration Statement for the terms of the IPO and a description of Bennett's stock sales and the proceeds he obtained in connection therewith; and otherwise deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 183 of the Complaint.

184.    Refer to the IPO Registration Statement for the terms of the IPO and a description of the Company's use of the proceeds obtained in connection therewith; aver that Refco paid down debt following the IPO; and otherwise deny the allegations contained in Paragraph 184 of the Complaint.

185.    Deny the allegations contained in Paragraph 185 of the Complaint.

186.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning Refco's potential liabilities as a result of the IPO contained in the

32

first sentence of Paragraph 186 of the Complaint; refer to the IPO Registration Statement for a description of the sales by Refco's existing shareholders in connection with the IPO, the proceeds obtained and the terms thereof; aver that portions of the IPO Registration Statement and IPO Prospectus were rendered false and misleading by reason of the fraudulent scheme perpetrated by Bennett and his co-conspirators, and deny any involvement in, or knowledge of, that scheme; aver that the allegations concerning Refco's potential liabilities in connection with the IPO constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations as directed to them); and otherwise deny the allegations contained in Paragraph 186 of the Complaint.

187.    Aver that the allegations contained in Paragraph 187 of the Complaint do not constitute allegations to which a response is required (to the extent a response is required, the THL Defendants deny those allegations).

188.    Admit that on August 10, 2005, the Refco Board of Directors approved the payment of a dividend to Refco's pre-IPO shareholders; refer to the corporate records of Refco for a description of the actions of the Board in connection therewith; and otherwise deny the allegations contained in Paragraph 188 of the Complaint.

189.    Admit that on August 11, 2005, Refco's IPO underwriters exercised their over-allotment option, pursuant to which they purchased an additional 3.975 million shares of Refco common stock; refer to the document referenced for its true and complete contents; and otherwise deny the allegations contained in Paragraph 189 of the Complaint.

190.    Refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 190 of the Complaint.

191.    Admit that on or about August 18, 2005, Refco Inc. paid to the 1997 Thomas H. Lee Nominee Trust, Thomas H. Lee Investors Limited Partnership and the THL Funds (the "THL Investors") approximately $40 million as a dividend; and otherwise deny the allegations contained in Paragraph 191 of the Complaint.

192.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition and in connection therewith intentionally made material misrepresentations to and withheld material information from the THL Defendants; deny any involvement in, or knowledge of, that scheme; reincorporate their responses to the prior allegations to the extent incorporated herein; and otherwise deny the allegations contained in Paragraph 192 of the Complaint.

193.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 193 of the Complaint.

194.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 194 of the Complaint.

195.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 195 of the Complaint.

196.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 196 of the Complaint.

197.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 197 of the Complaint.

198.    Aver that the allegations contained in the first sentence of Paragraph 198

of the Complaint constitute legal conclusions to which no response is required and are otherwise

not directed at the THL Defendants (to the extent a response is required, the THL Defendants

deny those allegations as directed at them); aver that Bennett and his co-conspirators engaged in

a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in,

or knowledge of, that scheme; and otherwise deny the allegations contained in Paragraph 198 of

the Complaint.

199.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny the allegations contained in Paragraph 199 of the Complaint.

200.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 200 of the Complaint.

201.    Refer to the contemporaneous news reports for a description of the impact

of the "Asian financial crisis;" and otherwise deny knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 201 of the Complaint.

202.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 202 of the Complaint.

203.    Refer to the documents referenced for their true and complete contents; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 203 of the Complaint.

204.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 204 of the Complaint.

205.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 205 of the Complaint.

206.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 206 of the Complaint.

207.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 207 of the Complaint.

208.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 208 of the Complaint.

209.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 209 of the Complaint.

210.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 210 of the Complaint.

211.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 211 of the Complaint.

212.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 212 of the Complaint.

213.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; deny the allegation in the fourth sentence of Paragraph 213 of the Complaint that "THL was in control of Refco;" and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 213 of the Complaint.

214.    Admit that, on October 10, 2005, Refco issued a press release (the "October 10, 2005 Press Release"); refer to that press release for its true and complete contents; and otherwise deny the allegations contained in Paragraph 214 of the Complaint.

215.    Refer to the October 10, 2005 Press Release for its true and complete contents; and otherwise deny the allegations contained in Paragraph 215 of the Complaint.

216.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; refer to the document referenced for its true and complete contents; aver that the allegations contained in the second sentence of Paragraph 216 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations); and otherwise deny the allegations contained in Paragraph 216 of the Complaint.

217.    Deny the allegations contained in Paragraph 217 of the Complaint.

218.    Admit the allegation contained in the first sentence of Paragraph 218 of the Complaint; aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 218 of the Complaint.

219.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 219 of the Complaint.

220.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; refer to the documents referenced for their true and complete contents; and otherwise

deny knowledge or information sufficient to form a belief as to the truth of the allegations

contained in Paragraph 220 of the Complaint.

221.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 221 of the Complaint.

222.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that

scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 222 of the Complaint.

223.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme

designed to hide Refco's true financial condition both before and after the August 2004

Transaction; deny any involvement in, or knowledge of, that scheme; aver that the allegation that

"the THL Entities were controlling shareholder" constitutes a legal conclusion to which no

response is required (to the extent a response is required, the THL Defendants deny that allegation); deny the allegation contained in the second sentence of Paragraph 223 of the Complaint that "THL had determined that Refco's accounting function was inadequate;" deny the allegation contained in the third sentence of Paragraph 223 of the Complaint; admit that the THL Individual Defendants served on the New Refco Board of Managers following the August 2004 Transaction through July 2005; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 223 of the Complaint.

224.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 224 of the Complaint.

225.    Admit that RCM held itself out as an unregulated entity that was not required to segregate customer assets; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 225 of the Complaint.

226.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 226 of the Complaint.

227.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegations contained in the first sentence of Paragraph 227 of the Complaint; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 227 of the Complaint.

228.    Aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 228 of the Complaint.

229.    Deny the allegations contained in the fourth, fifth and sixth sentences of Paragraph 229 of the Complaint, except for the allegation contained in the fourth sentence of Paragraph 229 of the Complaint concerning Jaeckel being "the Treasurer of New Refco;" refer to the documents referenced for their true and complete contents; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 229 of the Complaint.

230.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 230 of the Complaint.

231.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegation in the first sentence of Paragraph 231 of the Complaint that "THL was in control of Refco;" and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 231 of the Complaint.

232.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; deny the allegation contained in the first sentence of Paragraph 232 of the Complaint that "THL was in control of Refco" and the allegations contained in the second and third

41

sentences of Paragraph 232 of the Complaint; and otherwise deny knowledge or information sufficient to form a belief as to truth of the allegations contained in Paragraph 232 of the Complaint.

233.    Aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets, and that certain of the THL Defendants were made aware of the results of Grant Thornton's audit of Refco's 2005 financial statements; refer to the documents referenced for their true and complete contents; and otherwise deny the allegations contained in Paragraph 233 of the Complaint.

234.    Aver that Bennett and his co-conspirators engaged in a fraudulent scheme designed to hide Refco's true financial condition; deny any involvement in, or knowledge of, that scheme; aver that RCM held itself out as, and the THL Defendants understood it to be, an unregulated entity that was not required to segregate customer assets; and otherwise deny the allegations contained in Paragraph 234 of the Complaint.

235.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 235 of the Complaint.

236.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the Complaint.

237.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 237 of the Complaint that Refco "was insolvent and in the zone of insolvency beginning no later than the LBO," and that "numerous improper transactions caused Refco's insolvency to deepen;" and otherwise aver that the allegations contained in Paragraph 237 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations).

238.    Admit that Refco acquired Cargill for approximately $208 million in cash, as well as future contingent cash payments, and that such acquisition was approved by the Refco Board; and otherwise deny the allegations contained in Paragraph 238 of the Complaint.

239.    Admit that THLP and the THL Individual Defendants were aware that loans had been issued to Suffolk, LLC; deny knowledge or information sufficient to form a belief as to the truth of the allegations that the "Suffolk Loans were a sham;" and otherwise deny the allegations contained in Paragraph 239 of the Complaint.

240.    Aver that portions of the IPO Registration Statement and the Registration Statement for Refco's registered bond offering were rendered false and misleading by reason of the fraudulent scheme perpetrated by Bennett and his co-conspirators, and deny any involvement in, or knowledge of, that scheme; aver that the allegations contained in the third sentence of Paragraph 240 of the Complaint constitute legal conclusions to which no response is required (to the extent a response is required, the THL Defendants deny those allegations as directed at them); deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning obligations incurred by Refco in connection with the IPO; and otherwise deny the allegations contained in Paragraph 240 of the Complaint.

241.    Deny the allegations contained in Paragraph 241 of the Complaint.

242.    Admit that the following payments were made by a Refco entity:  (i) on or about August 5, 2004, approximately $30 million to THL Managers as a transaction fee in accordance with the Management Agreement, (ii) on or about August 5, 2004, approximately $1.67 million to THL Managers as a management fee in accordance with the Management Agreement, (iii) on or about March 2, 2005, approximately $1.458 million to THL Managers as a management fee in accordance with the Management Agreement, (iv) in or about August 2005,

approximately $40 million by Refco Inc. to the THL Investors as a dividend resulting from the underwriters' exercise of their over-allotment option in connection with the IPO, (v) approximately $12.2 million to the THL Investors in gross tax distributions and other receipts, and (vi) on or about August 26, 2005, approximately $12.872 million to THL Managers representing a lump-sum termination fee in accordance with the Management Agreement; refer to the Management Agreement for its true and complete contents; deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the identity of the remaining payors of the foregoing amounts; aver that the allegation contained in the first sentence of Paragraph 242 of the Complaint that "the THL Defendants were fiduciaries of the Refco parent entities" constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 242 of the Complaint.

243.    Admit that Refco Group (as successor by merger to Refco Finance Holdings) paid transaction fees, expenses and/or consulting fees of approximately $9.5 million in connection with the August 2004 Transaction; refer to the IPO Registration Statement for a list of the costs and expenses payable by Refco in connection with the sale of its common stock in the IPO; aver that the allegation contained in the first sentence of Paragraph 243 of the Complaint that "the THL Entities and THL Directors were fiduciaries of the Refco parent entities" constitutes a legal conclusion to which no response is required (to the extent a response is required, the THL Defendants deny that allegation); and otherwise deny the allegations contained in Paragraph 243 of the Complaint.

244.    Admit that prior to the IPO, New Refco made cash distributions to the members of New Refco to enable them to meet their estimated income tax obligations; aver that